UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 05-CV-66

BILLY STEWART JEFFRIES,                                              PETITIONER

v.                      **OPINION AND ORDER**

JAMES L. MORGAN, Warden                                 RESPONDENT

\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

This matter is before the Court on the Petition for Writ of Habeas Corpus (DE 1, 2 & 33) filed by petitioner Billy Stewart Jeffries pursuant to 28 U.S.C. § 2254. Pursuant to local practice, the petition was referred to Magistrate Judge J. Gregory Wehrman for a Report and Recommendation.

In his initial Report and Recommendation (DE 14), the Magistrate Judge recommended that the Court deny the petition and that Jeffries' Motion to Expand the State Court Record (DE 12) be denied as moot. This Court adopted the Magistrate Judge's Report and Recommendation as the opinion of the Court. (DE 16). Jeffries appealed that decision to the United States Court of Appeals for the Sixth Circuit which determined that the Court erred in denying Jeffries' Motion to Expand the State Court Record. (DE 22). The Sixth Circuit vacated the Court's denial of Jeffries' petition for habeas corpus, reversed this Court's denial of Jeffries' Motion to Expand the State Court Record, and remanded the case to this Court with instructions that this Court review the entire trial court record.

On remand, the Court ordered that the parties file the transcript of the trial proceedings in the record (DE 30) and the parties rebriefed Jeffries' petition. Judge Wehrman has now issued a

Supplemental Report and Recommendation (DE 38) in which he again recommends that the petition be denied. Jeffries has filed objections (DE 39) to the Supplemental Report and Recommendation. This Court must make a *de novo* determination of those portions of the Magistrate Judge's proposed report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C).

## I. FACTS.

In 1997, Jeffries was convicted in Shelby County, Kentucky of the attempted rape and violent murder of a 77-year old widow named Mary McKee. Jeffries was 15 years old at the time of the offense. He was sentenced to 35 years in prison.

Jeffries presents two arguments in his petition for habeas relief. First, Jeffries argues that, in upholding the trial court's denial of his motion for a new trial based on undisclosed information, the Kentucky Court of Appeals issued a decision that was contrary to or involved an unreasonable application of *United States v. Bagley*, 473 U.S. 667 (1985) and other U.S. Supreme Court cases interpreting *Brady v. Maryland*, 373 U.S. 83 (1963).

Second, Jeffries argues that, in rejecting his argument made on direct appeal that there was insufficient evidence to convict him, the Kentucky Supreme Court issued a decision that was contrary to or involved an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979).

## II. OBJECTIONS TO MAGISTRATE JUDGE'S FACTUAL FINDINGS.

The Magistrate Judge sets forth the facts of the matter in great detail in his Supplemental Report and Recommendation. Accordingly, this Court will not recite them again, except as necessary to resolve Jeffries' objections.

Jeffries objects to the Magistrate Judge's finding regarding precisely what information the Commonwealth failed to disclose to Jeffries prior to his trial. There is no dispute that the

Commonwealth failed to disclose the name John Dillon in response to Jeffries' pre-trial request for, "[a]ny information regarding the investigation of any other suspects in this case. This request includes but is not limited to: A) Any individuals that were questioned. . . B) [a]ny 'tips' that were received in response to the early reports of this case." (DE 2-10 at 8-9, Motion to Require the Commonwealth to Reveal Exculpatory Evidence). There is also no dispute that John Dillon was interviewed by police prior to Jeffries' trial and, thus, his name should have been disclosed in response to Jeffries' specific discovery request.

Jeffries objects to the Magistrate Judge's finding that the Kentucky Court of Appeals erred in finding that "Dillon's name was not disclosed '*as a suspect*.'" (DE 38, Supp. Report and Recommendation at 47)(emphasis added). In making this finding, the Magistrate Judge found that Detective Rick Babiarz testified at the May 1999 evidentiary hearing on Jeffries' new trial motion that Dillon was never considered a "suspect" prior to trial. Thus, in his Supplemental Report and Recommendation, the Magistrate Judge found that the "only suppressed information was that Dillon had been interviewed by Babiarz on March 7, 1995." (DE 38, Supp. Report and Recommendation at 48).

It is the Court's understanding that Jeffries argues that the Magistrate Judge should have found that the Commonwealth also failed to disclose prior to trial that Dillon was actually considered a "suspect." (DE 39, Objections at 24 "The Magistrate Judge Erred by Reconsidering the Settled Conclusion that Dillon's Name and Status as a Suspect were not Disclosed Before Trial").

The Court fails to see the significance of this issue. There is no dispute that John Dillon's name should have been provided to the defense prior to trial. Whether or not Dillon was a "suspect," he was certainly questioned. Thus, his name and any information regarding him, including the

3

content of his interview, should have been disclosed to Jeffries in response to his specific discovery request. This conclusion has been reached by every court that has looked at this issue and has not been disputed by the Commonwealth.

Furthermore, in this case, had the Commonwealth actually identified Jeffries as a "suspect," that would have only meant that he was a person who had been questioned by the police. Again, there is no dispute that, in response to Jeffries' specific discovery request, the Commonwealth should have revealed that Dillon was a person that the police had questioned.

At the hearing on Jeffries' motion for a new trial, Jeffries' counsel stated that the term "suspect" should be defined as anyone questioned by the police. At the end of Detective Babiarz's testimony at the hearing, the trial court inquired as to whether it needed to actually make a finding that Dillon was "defined as a suspect." Both parties agreed that such a finding was unnecessary to resolve the motion for a new trial. The trial court specifically asked:

> On this issue of John Dillon being a suspect, I mean, automatically, are you all using the definition that if he was interviewed he was a suspect, or that there had to be some objective mental criteria on the part of the investigating officers that he was a suspect. . . I mean....do I have to make a finding that he was defined as a suspect.

(DE 2-13, Tr. at 33-34).

The Commonwealth's counsel replied that he did not think it was an issue. Jeffries' counsel also stated he did not "believe it's an issue." (DE 2-13, Tr. at 34). Jeffries' counsel further stated that, in his Motion for Exculpatory Evidence, he had defined a suspect "as anyone who is questioned. So, I don't believe it's an issue. Once they questioned him, he fits my definition." (DE 2-13, Tr. at 34).

This Court agrees with the position of both parties at the hearing that, whether Dillon was

a "suspect," is a non-issue and need not be resolved to address Jeffries' *Brady* claims. Accordingly, the Court will modify the Report and Recommendation to delete the sentence, "[c]lose examination of the trial court record demonstrates that the finding by the Kentucky Court of Appeals that Dillon's name was not disclosed 'as a suspect' was also erroneous, to the extent that it significantly overstated the record" and the remainder of page 47. The Court will also modify the Report and Recommendation to omit the first partial paragraph of page 48.

Jeffries may also object to the Magistrate Judge's finding that the Commonwealth did disclose Dillon's *name* to the defense prior to trial and that the Commonwealth also disclosed the fact that probation officer Mike Miller had informed the police that Dillon was observed 7/10ths of a mile from the crime scene on the evening of the crime. (DE 39, Objections at 28, quoting a portion of Magistrate Judge's initial Report and Recommendation in which he declined to adopt the Commonwealth's contention that Dillon's name was in fact provided to the defense prior to trial).

There is no dispute that, prior to trial, the Commonwealth did provide Jeffries with copies of the notes of Detective Babiarz, one of which states:

> Mike Miller 714 Plainview Dr. between 17:10 & 17:20, observed John Dillon & a w/m, heavy set, brown hair, light colored jacket, 10th st. Between Bland & Clay st.

(DE 7-9 at 9). Jeffries concedes that "[t]he Commonwealth did provide Jeffries with Babiarz's handwritten notes of his canvas, one of which was Mike Miller's tip regarding Dillon." (DE 39, Objections at 27).

In his initial Report and Recommendation issued in this case, the Magistrate Judge concluded that the Commonwealth's "assertion that the defense was provided with Dillon's name is directly refuted by the facts as found by both the trial court and the Kentucky Court of Appeals." (DE 14,

5

Report and Recommendation at 23). Jeffries argued in his reply brief on remand (DE 37, Reply at 4, 5) that the Magistrate Judge is prohibited from altering this finding under the "law of the case" doctrine. That doctrine bars "challenges to a decision made at a previous stage of litigation which could have been challenged in a prior appeal, but were not." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir.1997).

Jeffries argues that the Magistrate Judge's finding on remand that Dillon's name was disclosed to the defense prior to trial violates the law of the case because the Commonwealth never objected to the finding made by the Magistrate Judge in his initial Report & Recommendation. However, the findings of the Magistrate Judge in his initial Report and Recommendation were vacated by the Sixth Circuit when it vacated this Court's opinion adopting them. The Sixth Circuit directed this Court to issue a new opinion after reviewing the entire trial court record. Accordingly, no party is bound by the Magistrate Judge's findings of fact made before this matter was appealed to the Sixth Circuit.

For this reason, and those stated by the Magistrate Judge in his Supplemental Report and Recommendation, the law of the case doctrine does not bar the Magistrate Judge or this Court from finding on remand that the Commonwealth did disclose John Dillon's name and Mike Miller's tip regarding Dillon to the defense prior to trial. Thus, to the extent that Jeffries objects to that finding, it is overruled.

    **III.    OBJECTIONS TO MAGISTRATE JUDGE'S LEGAL FINDINGS REGARDING *BRADY* CLAIM.**

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The essential elements of a *Brady* claim are 1) the evidence at issue must be favorable to the accused either because it is exculpatory, or because it is impeaching; 2) the evidence must have been suppressed by the State, either willfully or inadvertently; and 3) prejudice must have ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Prejudice exists when the suppressed evidence is "material." *Id*.

The Commonwealth failed to disclose to Jeffries the fact that Detective Babiarz interviewed Jeffries prior to trial and the contents of that interview. As to the specific contents of the interview, there was no recording of it produced to the trial court. In its response to Jeffries' motion for a new trial in the state court, the Commonwealth submitted Detective Babiarz's affidavit in which he states his recollection of the Dillon interview. In relevant part, Detective Babiarz stated the following:

- John Dillon indicated that he had not been around Billy Jeffries for several weeks around the time of Ms. McKee's murder.
- John Dillon stated he had not been in Ms. McKee's residential neighborhood around the time of Ms. McKee's murder.
- John Dillon indicated he had no knowledge of Billy Jeffries' whereabouts during the time of the murder.
- John Dillon's grandmother indicated that she was trying to use her influence to keep John Dillon from associating with Billy Jeffries.

(DE 7-10 at 39, Babiarz Aff.).

At the hearing on Jeffries' motion for a new trial, Detective Babiarz testified that he thought Dillon told him the reason he was at 10th Street between Bland and Clay as Mike Miller informed the police was that he was going to visit a girlfriend but Babiarz did not know who the girlfriend was. (DE 2-12 at 37).

In his Supplemental Report and Recommendation, the Magistrate Judge found no error in

the state court's legal determination that the information that was suppressed was not favorable to Jeffries. Jeffries objects to that finding. The Court finds it unnecessary to resolve this objection because, even if the undisclosed information were favorable to Jeffries, that is not the end of the *Brady* analysis. The Court must still find that the undisclosed information was "material." Accordingly, the Court will not adopt the Magistrate Judge's legal finding that the undisclosed information was not "favorable" to Jeffries.

Evidence is "material" for Brady purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). In *Kyles*, the Supreme Court emphasized four aspects of the materiality analysis.

First, the Court emphasized that , "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant)." *Id*. at 434.

> *Bagley*'s touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678.

*Id.*

Second, in *Kyles*, the Court emphasized that the test for materiality is not the same as the test for sufficiency of the evidence. It is irrelevant to the materiality analysis whether there would still have been sufficient evidence to convict even if the favorable evidence had been disclosed. *Id*. at

8

435 n. 8. The test is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id*. at 435.

Third, "once a reviewing court ... has found constitutional error there is no need for further harmless-error review." *Id*. Fourth, when the court analyzes materiality, the "suppressed evidence [must be] considered collectively, not item by item." *Id*. at 436.

Jeffries does not argue that the contents of the Dillon interview are material themselves. Rather, he argues that the contents of the interview are material because, had his counsel known the contents, such knowledge would have or might have led his counsel to discover additional evidence that would have been material. Specifically, Jeffries argues that, if his counsel had known that John Dillon claimed the reason he was seen in the vicinity of the crime at or about the time of the murder was that he was visiting his girlfriend, then his counsel would have discovered that was not true and may have discovered that Dillon confessed to third parties that he actually committed the crime.

Although the fact is disputed, there is at least some evidence in the record that, in an interview conducted by Detective Mike Pratt with John Dillon after Jeffries' trial, Dillon claimed to be visiting Jessica Payton on the night of the murder. (DE 2-13, Tr. at 18-19). While there is no evidence of Jessica Payton's testimony before the grand jury in the record, there does not appear to be any dispute that Jessica Payton denied before the grand jury that she was with Dillon on the night of the offense and further testified that she was 11 years old at the time. (DE 7-16 at 4-5). There is also no dispute that law enforcement officers became aware after Jeffries' trial that certain third parties said that Dillon had made statements indicating that he committed the murder. (DE 2-5 at 16-19, 29-32).

In *Bagley*, the Supreme Court stated that, in analyzing materiality, "the reviewing court may

9

consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case." 473 U.S. at 683. The Court further instructed:

> The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response.

*Id*.

In *United States v. Phillip*, the Sixth Circuit stated that information is material if it "consists of *or would lead directly to*, evidence admissible at trial for either substantive or impeachment purposes." 948 F.2d 241, 249-50 (6th Cir. 1991), *cert.denied*, 504 U.S. 930 (1992). On the other hand, there can be no *Brady* violation where a defendant offers only speculation that disclosure of certain evidence would have led to the discovery of other admissible evidence. *Hutchison v. Bell*, 303 F.3d 720, 743 (6th Cir. 2002)(citing *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995)).

Accordingly, in analyzing materiality, the Court will consider the undisclosed information itself, the effect that the nondisclosure had on the preparation or presentation of Jeffries' case before the trial court, and whether the nondisclosed information would have led directly to Jeffries' discovery of material information.

The Magistrate Judge determined that the undisclosed information was not material, agreeing with the state court's conclusion that the undisclosed information "only *possibly* could have led to some admissible evidence." (DE 38, Supp. Report and Recommendation at 53). The Magistrate Judge concluded that "Jeffries' ability to discover exculpatory evidence on the basis of the Commonwealth's incomplete discovery response is far too speculative to show materiality and prejudice required under *Brady*." (DE 38, Supp. Report & Rec. at 53).

In his objections, Jeffries argues that the Magistrate Judge's determination that the undisclosed information was not material was wrong for several reasons. First, Jeffries argues that, the Court should presume that, if Jeffries' counsel had been informed that John Dillon was interviewed and of the contents of the interview, then Jeffries' counsel would have investigated Dillon, which would have led Jeffries to discover at least that Dillon did not actually visit his girlfriend on the evening of the murder.

The Magistrate Judge determined that the record does not indicate that Dillon said he was visiting his girlfriend, Jessica Payton, on the evening of the murder. Jeffries objects to that finding. The Court need not resolve that objection. Even assuming that there is evidence in the record that Dillon did not actually visit the girl he claimed to be visiting on the night at issue, the Court cannot find that Jeffries would have discovered that Dillon was untruthful about his whereabouts at the time of the murder if only he had been aware of the contents of Dillon's interview.

This is because it is undisputed that the government did disclose to Jeffries prior to trial John Dillon's name and the fact that Mike Miller had observed him in the vicinity around the time of the crime. That disclosure did not prompt Jeffries' counsel to investigate Dillon and ask him what he was doing in the vicinity. Jeffries provides the Court with no reason to find that anything in Dillon's interview would have prompted Jeffries' counsel to investigate Dillon when the disclosure of Dillon's name and a report that he was in the vicinity at the time of the murder did not.

As to whether the disclosure of the contents of Dillon's interview would have directly led Jeffries' counsel to discover Dillon's alleged confessions to third parties, again, Jeffries provides the Court with no reason to make that finding. The Magistrate Judge noted that nothing in the pre-trial interview with Dillon would have directly led Jeffries to contact any of the third parties who made

11

statements regarding Dillon's confession. In his objections, Jeffries does not argue with this determination as to any of the third parties except Tammy Chesser. Jeffries states that Dillon did have a relationship with Tammy Chesser and, thus, any investigation of Dillon's friends and acquaintances may have disclosed Chesser's identify.

But there is no connection between the contents of Dillon's interview and Tammy Chesser. Certainly, the interview contents would not have brought Dillon's counsel in any more direct connection with Chesser than the disclosure of John Dillon's name.

For all these reasons, the Court agrees with the Magistrate Judge's conclusion that the Kentucky Court of Appeals' decision upholding the trial court's denial of Jeffries' motion for a new trial based on undisclosed information was not contrary to and did not involve an unreasonable application of *Bagley* or *Brady*.

**IV. OBJECTIONS TO MAGISTRATE JUDGE'S LEGAL FINDINGS REGARDING SUFFICIENCY OF EVIDENCE CLAIM.**

On direct appeal, the Kentucky Supreme Court rejected Jeffries' claim that there was insufficient evidence to support his conviction, finding that it was not "clearly unreasonable" for the jury to have found Jeffries guilty of attempted rape and murder. (DE 2-3, Ky. Supreme Court Opinion at 5).

Jeffries argues that finding is contrary to the Supreme Court's holding in *Jackson v. Virginia*, 443 U.S. 307 (1979) that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. Jeffries argues that, in resolving his sufficiency of the evidence claim, the Kentucky Supreme Court failed to consider the exculpatory evidence

presented at trial. (DE 33, Petition on Remand at 39).

The Magistrate Judge reviewed the evidence presented at trial and concluded that the Kentucky Supreme Court's ruling was not contrary to *Jackson*. In his objections, Jeffries argue that the Magistrate Judge erred because he analyzed each piece of evidence to determine "if there was an interpretation of each which was more consistent with guilt than innocence." (DE 39, Objections at 56). However, the Magistrate Judge explicitly reviewed the evidence in the light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This is consistent with *Jackson*.

Accordingly, the Court agrees with the Magistrate Judge's conclusion that the Kentucky Supreme Court's decision finding there was sufficient evidence to convict Jeffries of attempted rape and murder was not contrary to and did not involve an unreasonable application of *Jackson*.

The Court further notes that "the sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence.' *Jackson* does not extend to nonrecord evidence, including newly discovered evidence." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Further, the Kentucky Court of Appeals' decision upholding the trial court's denial of Jeffries' motion for a new trial based upon newly discovered evidence is not before this Court.

### V.  CONCLUSION.

For all these reasons, the Court hereby ORDERS as follows:

1)  The Magistrate Judge's Supplemental Report and Recommendation (DE 38) is ADOPTED as and for the Opinion of the Court EXCEPT for the following:

    a)  the Court does not adopt the Magistrate Judge's factual findings regarding whether John Dillon was considered a "suspect" prior to Jeffries' trial and the

        Supplemental Report and Recommendation is hereby MODIFIED to delete the sentence, "[c]lose examination of the trial court record demonstrates that the finding by the Kentucky Court of Appeals that Dillon's name was not disclosed 'as a suspect' was also erroneous, to the extent that it significantly overstated the record" and the remainder of page 47 through the first partial paragraph of page 48;

  b)  the Court does not adopt the Magistrate Judge's legal finding that the undisclosed evidence was not favorable to Jeffries; and

  c)  the Court does not adopt the Magistrate Judge's determination that John Dillon did not claim to be visiting Jessica Payton on the evening of the murder.

2)  Jeffries Petition for Petition for Writ of Habeas Corpus (DE 1, 2 & 33) is DENIED;

3)  Jeffries' objections to the Magistrate Judge's Supplemental Report and Recommendation (DE # 39) are OVERRULED; and

4)  judgment will be entered contemporaneously with this opinion and order in favor of respondent.

Dated this 10th day of December, 2009.



Signed By:
*Karen K. Caldwell*
United States District Judge